**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

MARILYN R. GOSSETT,

        Plaintiff,

vs.                                        Civ. No. 02-997 RHS

JO ANNE B. BARNHART,
Commissioner of Social Security Administration,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

    1.  This matter comes before the Court upon Plaintiff's Motion to Reverse or Remand Administrative Agency Procedure, filed May 28, 2003.[Doc. No. 10]. The Commissioner found that Plaintiff, Marilyn Gossett, had a closed period of disability that began on March 15, 1996 and ended September 1, 1998.  Plaintiff, age 53, alleges a disability which commenced March 15, 1996 due to diabetes, fibromyalgia, arthritis and depression.

    2.  The Commissioner denied Plaintiff's initial application for benefits both initially and on reconsideration. After conducting an administrative hearing, Administrative Law Judge ("ALJ") Carol Connor awarded the Plaintiff a closed period of disability.  Tr. at 274-277.  The Appeals Council granted Plaintiff's request for review, and affirmed the ALJ's finding that Ms. Gossett was disabled beginning March 15, 1996.  Tr. at 284.  The Appeals Council vacated the hearing decision with respect to the issue of disability after September 1, 1998 and remanded the case for a new hearing to determine if Plaintiff had experienced medical improvement, to consider whether she was entitled to a trial work period pursuant to 20 CFR 404.1594 and 404.1592, and for an evaluation of the

severity of her depression. Tr. at 284-285. Following a hearing on remand, a second ALJ, Gary Vanderhoof, found that Plaintiff had experienced medical improvement related to her ability to work, that she was not entitled to a trial work period, and that the record did not establish the existence of a severe mental impairment. The Appeals Council denied Plaintiff's request for review, thus the ALJ's decision is the final decision of the Commissioner. Ms. Gossett now seeks review of that final decision pursuant to 42 U.S.C. §405(g).

3. At the time of the Commissioner's final decision, claimant was 49 years old, with a high school education. Her past relevant experience was as a computer operator and a secretary. She also worked for five months as a part-time DWI tracker for Eddy County.

4. The standard of review in social security appeals is whether the Commissioner's final decision, in this case the ALJ's decision, is supported by substantial evidence. Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993)(citations omitted). Additionally, the Commissioner's final decision can be reversed if the ALJ failed to apply the correct legal tests. Id. (citation omitted).

5. Plaintiff raises the following allegations of error with respect to the ALJ's decision: (1) Independent contracting work performed by the claimant at her home from December 1998 through January 1999 was an unsuccessful work attempt, and as such should have entitled Plaintiff to continuation of her disability insurance benefits; (2) Plaintiff was unlawfully denied the benefit of a trial work period between September 1998 and January 1999.

6. "To qualify for disability benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity." Id. at 1486 (citing 42 U.S.C. §423 (d)(1)(A). Social Security Regulations require the Commissioner to evaluate five factors in

a specific sequence in analyzing disability application. Id.; see 20 C.F.R. §§ 404.1520(a - f); 416.920. The sequential evaluation process ends if at any step the Commissioner finds that the claimant is disabled or not disabled. Id. (citations omitted).

    7. At the first four levels of the evaluation, the claimant must show: (1) that he or she is not working; (2) that he or she has an impairment or combination of impairments severe enough to limit the ability to do basic work activities; (3) that the impairment meets or equals one of the listing of impairments in 20 C.F.R. Pt. 404, Subpt.P, App.1; or (4) that he or she is unable to perform work done in the past.

    8. ALJ Vanderhoof decided the case at the fourth step of the evaluation process. Step Four requires a determination as to whether plaintiff is able to return to past relevant work. If the ALJ ceases the sequential evaluation at step four, he must "review the claimant's residual functional capacity `and the physical and mental demands of the work . . . done in the past.' 20j C.F.R. ¶ 404.1520(e)." Henrie v. United States Dep't of Health & Hum. Serv., 13 F.3d 359, 361 (10th Cir. 1993); see SSR 83-62.

    9. The ALJ determined that Plaintiff became disabled beginning March 15, 1996 and that as of September 1, 1998, she was no longer disabled because she had the ability to return to " her past relevant work or other work that exists in significant numbers." Tr.at 25. He determined that because she was not disabled within the meaning of the Social Security Act, she was not entitled to a "trial work period," which allows a disabled claimant to return to work in order to test her abilities without forfeiting her entitlement to benefits. He therefore found that she was entitled to a closed period of disability beginning March 15, 1996, and ending September 1, 1998. Tr. at 25-26.

    10. Plaintiff alleges that the ALJ Vanderhoof erred when he discontinued her benefits because

Plaintiff's work from late 1998 through early 1999 was an unsuccessful work attempt, not substantial gainful activity. In the first decision, ALJ Connor found that Plaintiff's disability ceased on September 1, 1998 because she returned to work on that date. Tr. at 277. On remand, the Appeals Council noted that a trial work period should be considered before ceasing benefits "based on return to work." Tr. at 284. In the second decision, ALJ Vanderhoof denied benefits after September 1, 1998, based on medical improvement. Tr. at 26. Plaintiff argues that this reason was pretextual and that the second denial, like the first denial, was actually based on her unsuccessful attempt to return to work. Although the Court is concerned only with the decision of ALJ Vanderhoof for purposes of this appeal, the errors alleged by Plaintiff require a brief analysis of the decision of ALJ Conner as well.

11. Focusing on the first step of the five-step evaluation process, ALJ Connors concluded that Ms. Gossett engaged in substantial gainful activity when Plaintiff worked out of her home as a DWI tracker from September 1998 to January 1999. Because of this employment, ALJ Connor denied benefits after September 1, 1998 at step one of the sequential evaluation process. At step one, the claimant has the burden of showing she is not performing substantial gainful activity. See 20 C.F.R. 404.1571; Musgrave v. Sullivan, 966 F.2d 1371, 1376 (10th Cir.1992)(claimant has burden of proving disability); Fowler v. Bowen, 876 F.2d 1451, 1453 (10th Cir.1989)(claimant engaged in substantial gainful activity will not be found disabled no matter how severe his impairments). Substantial gainful activity is work that is both substantial, i.e., involving significant physical or mental activities even if done part-time or if the claimant does less, gets paid less, or has less responsibility than when he worked before; and gainful, i.e., work done for pay or profit, whether or not a profit is realized. 20 C.F.R. § 404.1572(a), (b).

12. To determine whether a self-employed claimant is performing substantial gainful activity, the Commissioner examines the claimant's activities and their value to her business, including (1) whether the claimant's work activity in terms of "hours, skills, energy output, efficiency, duties, and responsibilities, is comparable to that of unimpaired individuals" in the same or a similar business; (2) if the work activity is not comparable, whether, in terms of its value to the business, the activity is worth the amount shown in 20 C.F.R. §404.1574(b)(2); or (3) whether the claimant provides significant services to the business and receives substantial income therefrom. Id. § 404.1575(a). The Commissioner also considers whether the claimant performs any "[s]upervisory, managerial, advisory or other significant personal services." Id. § 404.1573(d). Income alone is not determinative. Id. 404.1575(a). If Plaintiff actually engaged in substantial gainful activity, she could not be found disabled, regardless of the severity of her impairments. Id. 404.1520(b). An exception to this rule, however, applies when work activity during a trial work period may not be counted in showing that a disability has ended. See 42 U.S.C. § 422(c)(2); 20 C.F.R. § 404.1592(a).

**Unsuccessful Work Attempt**

13. Plaintiff argues that her work as a DWI tracker was an unsuccessful work attempt and as such should have entitled her to continuation of her disability benefits. Certain activities which last a short time may be considered unsuccessful work attempts. These activities may not count as substantial gainful activities so as to terminate a period of eligibility for disability payments. See 20 C.F.R. §§ 404.1574(a)(1), Andler v. Chater, 100 F.3d 1389, 1392 (8th Cir. 1994). ALJ Connor made the threshold finding that Plaintiff's independent contractor work as a DWI tracker constituted substantial gainful activity, not an unsuccessful work attempt. Tr. at 277. Accordingly, Gossett would be entitled to benefits under the first decision only if the work qualified as a trial work period.

**Trial Work Period**

14. Disabled claimants may be entitled to a trial work period, which allows them to test their ability to work without losing disability benefits. See 20 C.F.R. § 404.1592(a). Ms. Gossett contends that her return to work qualified as a trial work period and that it therefore cannot be counted in determining her disability status. On remand from the first decision, the Appeals Council specifically instructed ALJ Vanderhoof to consider the issue of whether Plaintiff was entitled to such a trial work period. Tr. at 284.

15. ALJ Vanderhoof terminated Plaintiff's closed period of disability on the basis of medical improvement, not because she was engaging in substantial gainful activity. The ALJ found that, due to her medically improved condition, Plaintiff was no longer disabled and therefore was not entitled to a trial work period. Tr. at 25.

16. The concepts of unsuccessful work attempt and trial work period apply only when benefits are denied or terminated because a claimant has engaged in substantial gainful activity. In this case, ALJ Vanderhoof was asked to review the determination that Plaintiff was only disabled from March 15, 1996 to September 1, 1998. Like the first ALJ, he found that Plaintiff's disability ceased on September 1, 1998, however, because he based that finding on medical improvement, he was not required to discuss the issue of an unsuccessful work attempt or to find that Plaintiff was entitled to a trial work period.

**Medical Improvement**

17. The Tenth Circuit has determined that the medical improvement standard under which improvement in claimant's condition may terminate eligibility for disability benefits applies in "closed period" cases in which a claimant is found to have been disabled for a finite period of time. Shepard

6

v Apfel, 184 F.3d 1196, 1200, (10th Cir. 1999).  In order to determine whether disability continues or ends, the Commissioner must determine "if there has been any medical improvement in [Plaintiff's] impairment and if so, whether this medical improvement is related to [Plaintiff's] ability to work." Id. citing 20 C.F.R. §404.1594(a).

18.  In this closed period case, the ALJ discussed each of Plaintiff's alleged impairments, including insulin dependent diabetes, fibromyalgia[1], knee pain, and depression.  He found that Plaintiff's diabetes was her only severe impairment, Tr. at 25, and that finding is supported by substantial evidence.

19.  The issue of medical improvement, therefore, relates exclusively to Plaintiff's diabetes. The consultant state examining physician, Dr. Lenora Herrera, described Plaintiff's diabetes in January 1998 as " very brutal and highly uncontrollable in spite of use of insulin pump [with] blurred and double vision, peripheral neuropathy...and chronic problems with detecting when her sugars are fluctuating, especially in the low range." Tr. at 248.  According to the ALJ, Plaintiff began to responding to treatment in the second half of 1998, and by September 1998, she was no longer experiencing the symptoms that had limited her ability to work. Tr. at 21.   20.  Plaintiff's medical records reflect that she reported to her physician on August 29, 1998, that her blood sugar was frequently dropping to dangerously low levels and the physician characterized her diabetes as " no[t] that well controlled." Tr. at 348.  Although Plaintiff was able to work about 60 hours a month out

---

[1]Fibromyalgia has been described as "pain in the fibrous connective tissue components of the muscles, tendons, ligaments, and other white connective tissue " Cline v. Sullivan, 939 F.2d 560, 563 (8th Cir. 1991).  Fibromyalgia causes stiffness and multiple tender points in the body that when pressed firmly cause the patient to flinch. Sarchet v. Chater, 78 F.3d 305, 306 (7th Cir. 1996)and is accompanied by symptoms such as poor sleep and fatigue.  Duncan v. Apfel, (Table, text in Westlaw), 1998 WL 544353 (10th Cir. Okla ).

of her home between September 1998 and January 1999, she was admitted to the hospital on February 11, 1999 in ketoacidosis and spent several days in intensive care. Tr. at 327-340. The ALJ recognized that Plaintiff's blood sugar levels were high later in February and March of 1999, Tr. at 22. Laboratory results continued to reflect poor control of blood sugar in September of 1999. Tr. at 395. In June of 2000, she had very high blood glucose levels, which were attributed to faulty operation of her insulin pump, Tr. at 353. In August of 2000, Plaintiff again experienced very high blood glucose levels and was hospitalized for two days for metabolic acidosis.

      21. The Shepard Court explained that in order "[t]o apply the medical improvement test, the ALJ must first compare the medical severity of the current impairment to the severity of the impairment which was present at the time of the most recent favorable medical decision finding the claimant disabled," 184 F.3d at 1201, citing 20 C.F.R. §404.1594(b)(7). " Then, in order to determined that medical improvement is related to ability to work, the ALJ must reassess a claimant's residual functional capacity ("RFC") based on the current severity of the impairment which was present at claimant's last favorable medical decision." Id. citing §404.1594(b)(7). "The ALJ must then compare the new RFC with the RFC before the putative medical improvements. The ALJ may find medical improvement related to an ability to do work only if an increase in the current RFC is based on objective medical evidence." Id.

      22. The ALJ concluded that by September 1998, Plaintiff had "achieved much greater control over her blood sugar levels" and that although she "still had diabetes, her impairment was no longer disabling." Tr. at 22. This conclusion is not supported by the record. The medical evidence, to the contrary, establishes that Plaintiff's symptoms and laboratory findings have been substantially unchanged from the time period for which Plaintiff was granted benefits. Plaintiff's temporary return

to work does not, by itself, constitute medical improvement.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Reverse or Remand for a Rehearing, filed May 28, 2003 [Doc. No. 10] is granted. This case is remanded to the Commissioner for reconsideration of the issue of medical improvement consistent with this opinion.

*/s/ Robert Hayes Scott*
ROBERT HAYES SCOTT
UNITED STATES MAGISTRATE JUDGE